**UNITED STATES of America**

v.

**Michael D. PIHAKIS, Appellant.**

**No. 11401.**

United States Court of Appeals
Third Circuit.

Argued April 6, 1955.

Decided August 10, 1955.

Sanford S. Finder, Washington, Pa., for appellant.

W. Wendell Stanton, Asst. U. S. Atty., Pittsburgh, Pa. (John W. McIlvaine, U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

Pihakis was indicted on three counts. The first two counts are substantially similar to those which were passed upon and held invalid by this court in United States v. Tornabene (United States v. Caplan), 3 Cir., 1955, 222 F.2d 875. Accordingly these counts must be quashed on remand.

The third count, on which imposition of sentence was suspended, was based on Sections 2(a) and 1341, 18 U.S.C. Paragraph 1 of count 3 charges that John Wagner was an officer of the First Na-

tional Bank in Cecil, Cecil, Pennsylvania, and that Pihakis aided and abetted Wagner, "deceased, who was not indicted". Section 2(a), 18 U.S.C., provides that whoever commits an offense against the United States or abets its commission is punishable as a principal. The second paragraph of the third count charges that Pihakis, as "a principal defendant herein," and Wagner devised a scheme to defraud the First National Bank in Cecil by presenting checks signed by Pihakis and his wife drawn against their account in the Citizens Trust Company of Canonsburg, Pennsylvania, to the First National Bank in Cecil when there was an insufficient credit balance in the Pihakis account in the Citizens Trust Company to cover the checks, that Wagner would forward the checks by a remittance letter "knowing that said checks would, in the regular course of business, be forwarded" to the Citizens Trust Company for payment when there was an insufficient credit balance to pay them, and that Pihakis and Wagner knew and planned as a part of the scheme to defraud that, when the checks would be returned "in the regular course of business" to the National Bank in Cecil because of insufficient funds in the Pihakis account in the Citizens Trust Company, the National Bank in Cecil "would not be secured, repaid or reimbursed in any manner" for the repayment of the checks.

The third paragraph of the third count alleges that Pihakis as "a principal," in order to execute the scheme to defraud, placed in the United States mails for delivery to the Federal Reserve Bank at Pittsburgh two checks, one for $3,600 and one for $400, drawn by himself and his wife on the Citizens Trust Company of Canonsburg in violation of Section 1341, which imposes criminal sanctions for using the mails to defraud. Count 3 charges a scheme to defraud the First National Bank in Cecil and that Pihakis used the mails in furtherance of that scheme.

Pihakis first raised as a defense, relying on Kann v. United States, 1944, 323 U.S. 88, 92–95, 65 S.Ct. 148, 89 L.Ed. 88, the fact that Pihakis obtained the money represented by the $3,600 and $400 checks from the First National Bank in Cecil, through Wagner's connivance, when those checks were first presented at the bank; therefore, he says, a crime, obtaining money by false pretenses, was completed before the checks were forwarded via the United States mail through the Federal Reserve System, and the mailing of the checks was in nowise essential to the carrying out of the plan.

■ We cannot agree. The use of the mails was an essential part of the scheme to defraud. There is ample evidence to sustain a finding by the jury that an essential part of the scheme was the mailing of the checks via the Federal Reserve System to Canonsburg by Wagner, Pihakis knowing that there would be insufficient funds to pay them, and the return of the checks by the mails with the usual notice of protest, the checks being retained by Wagner on their return. It follows that the fraud upon the bank was not completed until after the mails had been used twice in the manner indicated.

The instant case does not resemble the Kann case. Here there was a continuous course of fraudulent conduct by Pihakis which involved the use of the mails. This was not a single isolated instance of the use of the mails, the fraud being completed before the mails were employed, as in Kann. Pihakis' operations were ordinary kiting. The case is governed by the principles announced in United States v. Lowe, 7 Cir., 1940, 115 F.2d 596, certiorari denied 1941, 311 U.S. 717, 61 S.Ct. 441, 85 L.Ed. 466, approved by the court in Kann, 323 U.S. at pages 94–95, 65 S.Ct. at pages 150–151, 89 L.Ed. 88. See also United States v. Citrin, D.C. S.D.N.Y.1945, 58 F.Supp. 766. The first defense set up by Pihakis falls.

■ The second defense presents a more serious question. There was evidence from which the jury could have found, had its members believed Pihakis' testimony, that the extraordinary conduct of Pihakis and Wagner evolved from the desire of Pihakis to obtain loans

from the First National Bank in Cecil and that the checks were cashed by Wagner for the bank as a means of advancing to Pihakis money by way of credit. The evidence presented on behalf of Pihakis showed that he and his wife were the owners of valuable real estate and that they had given the bank mortgages upon their properties, one mortgage having been reduced to some extent. There was also introduced in evidence a blank promissory note in the sum of $4,500 executed by Pihakis and his wife on July 21, 1948 which Pihakis testified was to protect the bank for his so-called loans. The United States through its evidence showed that Wagner had no power to make a loan in excess of $500 without authority of the board of directors and that no authority had been given Wagner to make any loan or loans to Pihakis. Indeed, Pihakis' assertion that his check-kiting operations were in fact a method of obtaining money by loan is entitled to little credence. Nonetheless, the assertion presented an issue of fact to be determined by the jury.

But in respect to this, his major defense, Pihakis presented a number of requests for charge of which requests 2 and 3 are significant. They are as follows: "If the defendant fully intended to repay the bank and had an ability through his real property to do so and had given the bank security for the money represented by the checks, there is no intent to defraud and no crime of misapplication of the funds of the bank, and the defendant would therefore be entitled to an acquittal."; and "If the jury find that the defendant intended and reasonably expected to pay the checks in question there would be no intent to defraud, and you should therefore acquit the defendant."

The court refused these requests and, upon objection by Pihakis, stated that it had in effect charged them adequately, insofar as was proper, by what already had been said to the jury. The substance of Pihakis' objection to the failure to charge requests 2 and 3 is that he was deprived of his defense that he did not possess the

necessary criminal intent in that he was obtaining loans rather than money by fraudulent pretenses. It is clear that the court below intended to charge that to negative criminal intent the jury had to find either that Pihakis thought there were sufficient funds in his and his wife's account in the Citizens Trust Company of Canonsburg to cover the checks given by them or that Pihakis thought he had in effect posted sufficient security with the First National Bank in Cecil to cover the checks and believed that in cashing the checks he was effecting a loan or loans.

After reading the second request for charge, the court said: "Well, the fact is we will have to modify that. He didn't pay them. He didn't pay them until 1951. The mortgage, $5,000, was not paid—the mortgage on the house was not —yes, reduced $600 and the interest. But these other things were paid in 1951, and the transactions were 1950. In order to negative intent, you would have to find that at the time he was doing this thing he was not intending to defraud and cheat, but he intended when they got over there at that bank these bad checks would be good and the bank wouldn't be out its money—unless he had sufficient security over here to cover the bank for these checks that are on the way. If he didn't, and he is using that bank's money when it belongs to the depositors, when it belongs in the bank and belongs to the bank itself, and it is being used for somebody else's purposes instead of for that bank, you could say, if you believed that, that he was misapplying the funds, he and Wagner."

After reading the third request for charge, the court said: "I say to you, if he intended to pay those checks right there and then, no. But he says he knew there was nothing over there when he got there, and the evidence is he went over to make a deposit, but that was to pay the ones that were already there before that and not to pay the ones that were on the way."

One can arrive at what we believe the court actually meant only after sev-

eral close readings of the transcript and we are of the opinion that the charge must have resulted in confusion in the jurors' minds. Pihakis was entitled to a clear charge upon this very important aspect of his defense, and the failure of the court below to give such a charge was in our opinion substantial prejudicial error, requiring a new trial.

The cause will be remanded with instructions to vacate the judgments of conviction on counts one and two and to quash those counts, and to reverse the judgment of conviction upon the third count.